THE FARMERS & MERCHANTS BANK OF SCANDIA, *Appellant,* v. MARIAN N. KACKLEY et al., *Appellees.*

No. 17,720.

HEADNOTE BY THE REPORTER.

1. DEED — *Absolute in Form* — *When a Mortgage* — *Evidence.* Whether a conveyance absolute in form and a contemporaneous agreement to reconvey constitute a mortgage depends upon the existence or nonexistence of a debt. If the deed be made to secure a debt it is in legal effect a mortgage.

2. —— *Same.* The true character of the transaction may be shown by parol evidence, and the fact that the mortgagor subsequently leases the property from the mortgagee does not change the nature of the relation.

Appeal from Clay district court. Opinion filed November 9, 1912. Affirmed.

*Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, and *Hale H. Cook,* of Kansas City, Mo., for the appellant.

*W. D. Vance,* and *R. E. McTaggart,* both of Belleville, and *R. W. Turner,* of Mankato, for the appellees.

*Per Curiam:* Whether or not a conveyance absolute in form and a contemporaneous separate agreement to reconvey constitute a mortgage depends upon the existence or nonexistence of a debt. If the deed be made to secure a debt it is in legal effect a mortgage. The true character of the transaction may be shown by parol evidence, and the fact that the mortgagor subsequently leases the property from the mortgagee does not change the nature of their relations. It is scarcely necessary to print again and again the authorities in support of these propositions.

Anderson's testimony was that he had no claim on the land. He left it in the hands of Kackley the day he bought it. Kackley owed him $1400 for money he had advanced and two notes for interest on the money

at eight per cent, called rent notes, and held the deed to secure the money. He offered Kackley more time, but Kackley arranged with the bank for the money and the bank paid Anderson. Anderson said the deed should go to Kackley, but the cashier, who conducted the transaction for the bank, said the bank's agreement was the same as Anderson had and that they were to hold the land for Kackley for the money which Anderson got as long as Kackley desired. So Anderson deeded to the bank in order that it might be secured for the money it paid him.

If the direct testimony were less clear that the bank simply stepped into Anderson's shoes doubt would be removed by some further considerations. In estimating the transaction we are obliged to start with the assumption that the "black and white" instruments were something other than they seemed in order to clear the bank cashier of a violation of law. This is all the more easy because there appeared to be no profit in the deal except interest. If the deed were not a mortgage the bank bought for cash and agreed to sell a year later for the same price—a queer thing for a bank to do in violation of law. Again, the cashier knew all about the actual facts. He was a witness for some formal purposes, like the identification of documents and signatures, but he was discreetly silent upon the very things which were most material—a circumstance which the law regards as signifying nothing helpful in mind to say. The result is the testimony was all one way—abundant, clear, and affording a basis for but one conclusion; and this being true some bits of testimony wrongfully admitted, like Claude Kackley's instructions to Carlos Kackley and Anderson's declaration to Marian Kackley, are wholly negligible. The admissions of the cashier to interested parties when the land or debt was the subject of business discussion were of course properly received.

The findings relating to leasing and payment of rent

simply pierce through the form of the transaction to its essence and substance and are fully sustained. The argument relating to laches is met by the Dusenbery case. (*Dusenbery v. Bidwell,* 86 Kan. 666, 121 Pac. 1098.)

It makes no difference that the objection to a jury trial was overruled because the case was finally disposed of as an equity case, the function of the jury being limited accordingly. The instruction withdrawing the general issue from the jury was based on a misconception of the law, but it had no influence on the findings because they established the opposite theory of a mortgage and not a deed—a perfectly legitimate transaction.

The judgment of the district court is affirmed.